**B.J. BROWN, Appellant,**

v.

**THE STATE BAR OF TEXAS, Appellee.**

No. 08–96–00041–CV.

Court of Appeals of Texas,
El Paso.

April 3, 1997.

Ted M. Kerr, Kerr and Ward, L.L.P., Midland, for appellant.

Malcolm Schulz, Abilene, Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, Linda Acevedo, Assistant General Counsel, Austin, for appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a judgment ordering a public reprimand against attorney B.J. Brown. Following a bench trial, the trial court found attorney Brown violated various disciplinary rules by her conduct in two divorce cases. We reverse the judgment of the trial court and render judgment in favor of Appellant.

## I. SUMMARY OF THE EVIDENCE

This is an appeal from a judgment of the trial court ordering a public reprimand of an attorney following a bench trial. The trial court found that in two different divorces, Appellant violated various rules contained in the Texas Rules of Professional Conduct and the Texas Rules of Professional Responsibility. The two divorces were the Glenda Sue Buttrell nee Gibson (Buttrell) and the Jessica M. Caruso (Caruso) divorce.

### A. The Caruso Divorce

In the Caruso divorce, Caruso hired Appellant in November 1988 to file a petition for divorce. The petition was filed February 1989. The divorce hearing was held on September 21, 1989 before Judge Carol Gregg. Brown was instructed to draft the divorce decree. Caruso called Appellant's office in October, November, and December 1989, and January 1990, inquiring into the status of her divorce decree. On February 1, 1990, Caruso filed a grievance against Appellant. The divorce decree was signed on February 15,

1990, some five months from the day of the hearing granting the divorce and the signing of the decree. The explanation given for the delay was the length of time it took to obtain a statement of facts from the court reporter. As noted above, the final divorce hearing occurred on September 21, 1989. At the time of the hearing, the Judge's father had just been taken to the hospital and so the Judge accelerated the hearing. Appellant was unable to write down all the nonstandard and restrictive possessory conservator provisions regarding the child. Appellant contacted the court reporter and asked him for a transcript to determine what all the conservator provisions were so that they could be incorporated in the divorce decree. The record shows that every few days, Appellant would check to see if the transcript was ready. It was not until late November that the court reporter finally contacted Appellant and read her the requested information concerning the conservatorship provisions. The record further shows that by that time, Appellant was involved in a trial and subsequently became extremely ill with the flu. Appellant recalls on or about December 15, 1989, she took the decree of divorce to the judge but was told the judge would not be back officially until after the first of the year. The record shows that the decree of divorce was not signed until February 15, 1990 and was otherwise completely satisfactory to Caruso in protecting her and her child from her ex-husband.

## B. The Buttrell Divorce

In the Buttrell divorce, Buttrell hired Appellant in June 1990 to file a petition for divorce. Appellant filed the original petition in August 1990. The hearing was held on September 24, 1990. Buttrell placed a number of calls to Appellant, although the exact number is disputed. The decree of divorce was signed January 24, 1991, four months after the uncontested divorce had been granted. At trial, Appellant's explanation for the delay was that her runner had taken the decree to the office of the Judge of the County Court at Law, Judge Svanas, because the decree reflected on its face that it was a case filed in that court. The record shows that Judge Svanas was quite ill in the fall of

1990, and subsequently died in January 1991. When Appellant learned that the clerk's office did not have a divorce decree, Appellant went to the courthouse to inquire. Appellant went to Judge Svanas' former office area and found the boxes of papers from his office and started to dig through the boxes and found the Buttrell divorce decree. Appellant promptly took the decree to District Judge Gene Ater who signed the decree, and a copy was ultimately forwarded to Buttrell.

## C. Trial Courts Findings of Fact and Conclusions of Law

Following the bench trial, Appellant made a request for Findings of Fact and Conclusions of Law. The trial court's findings of fact were: (1) Appellant filed suit for divorce for Glenda Sue Buttrell on July 10, 1990; the divorce suit was heard on September 24, 1990; Glenda Sue Buttrell made several inquiries concerning the entry of a decree; Appellant told Glenda Sue Buttrell that she had prepared a divorce decree but that the judge was engaged in an election and she could not get the judge to sign the decree; and the decree was signed on June 24, 1991; and (2) Jessica M. Caruso engaged the services of Appellant in November 1988 to obtain a divorce; the divorce was heard on September 21, 1989 and child support was ordered; Jessica M. Caruso called Appellant's office during the months of October, November, December 1989, and January 1990 because she had never received a decree of divorce or any child support; Jessica M. Caruso made inquiries to the District Clerk's office and of Judge Gregg's office; as of January 9, 1990, Jessica M. Caruso had received neither a divorce decree nor any child support; Jessica M. Caruso filed a complaint with the local grievance committee on February 1, 1990; and finally, on February 15, 1990, a decree was entered including a provision that child support was to begin on October 5, 1989.

The conclusions of law found by the trial court, based on the above findings of fact, were that Appellant: (1) violated Rule 1.01(b) of the Texas Disciplinary Rules of Professional Conduct by neglecting a legal matter entrusted to her and failing to completely

carry out the obligations owed to her clients, Glenda Sue Buttrell and Jessica M. Caruso (Conclusions of Law Nos. 1 and 4); (2) violated Disciplinary Rule 7–101(A)(2) of the Texas Rules of Professional Responsibility by failing to carry out a contract of employment entered into with Glenda Sue Buttrell and Jessica M. Caruso (Conclusions of Law Nos. 2 and 5); and (3) violated Disciplinary Rule 6–101(A)(3) of the Texas Rules of Professional Responsibility by willfully or intentionally neglecting a legal matter entrusted to her by Glenda Sue Buttrell and Jessica M. Caruso (Conclusions of Law Nos. 3 and 6).

Appellant was issued a public reprimand from which she now appeals.

## II. DISCUSSION

In ten points of error, Appellant alleges that there is legally and factually insufficient evidence to support the trial court's findings of fact and conclusions of law.

### A. Standards of Review for Findings of Fact and Conclusions of Law

■■■ Appellant requested and ultimately obtained findings of facts and conclusions of law. As a general rule, findings of a trial court in a nonjury case have the same presumption of conclusiveness and weight on appeal as a jury verdict. *County of El Paso v. Ortega*, 847 S.W.2d 436, 440 (Tex.App.—El Paso 1993, no writ); *Chitsey v. Winston Interior Design, Inc.*, 558 S.W.2d 579 (Tex.Civ. App.—Austin 1977, no writ). Unless the findings of the trial court are challenged by a point of error on appeal, they are binding on the appellate court. *County of El Paso*, 847 S.W.2d at 440; *Wade v. Anderson*, 602 S.W.2d 347 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Bilek v. Tupa*, 549 S.W.2d 217 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Zelios v. City of Dallas*, 568 S.W.2d 173 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). The judgment of the trial court will not be set aside if there is any evidence of a probative nature to support it, and this Court of Appeals may not substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607 (Tex.

1979); *County of El Paso*, 847 S.W.2d at 440; *Chitsey*, 558 S.W.2d at 581; *Page v. Central Bank & Trust Co.*, 548 S.W.2d 802 (Tex.Civ. App.—Eastland 1977, no writ). However, while the factual findings of the trial court in the instant case are binding upon this Court, its conclusions of law are not likewise binding, and this Court is free to make its own legal conclusions. *County of El Paso*, 847 S.W.2d 436 at 441; *Muller v. Nelson, Sherrod & Carter*, 563 S.W.2d 697 (Tex.Civ. App.—Fort Worth 1978, no writ). Moreover, where the trial court's findings of facts conflict with its conclusions of law, findings of facts will be deemed to control. *County of El Paso*, 847 S.W.2d at 441; *Gary Safe Company v. A.C. Andrews Co., Inc.*, 568 S.W.2d 166 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

### B. Standard of Review for Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings of fact and conclusions of law.

■■■ A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Tseo v. Midland Am. Bank*, 893 S.W.2d 23, 25–26 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand*, 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied). The reviewing court cannot substitute its conclusions for those of the court. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. See *Tseo*, 893 S.W.2d at 26; *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 412 (Tex.App.—El Paso 1994, writ denied). It is not within the province of this Court to interfere with the trial court's resolution of conflicts in the evidence, or to pass on the weight or credibility of the witnesses' testimony. See *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Southwest Airlines Co. v. Jaeger*, 867 S.W.2d 824, 829–30 (Tex.App.—El Paso 1993, writ denied).

Where there is conflicting evidence, the trial court's determination on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 512 (1947); *Tseo*, 893 S.W.2d at 26; *Hallmark*, 885 S.W.2d at 474.

 In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402 (Tex.App.—El Paso 1994, writ denied). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Tseo*, 893 S.W.2d at 25; *Hallmark*, 885 S.W.2d at 474.

### C. Appellant's Points of Error

### 1. Point of Error No. Six

Appellant's Point of Error No. Six alleges that there is no evidence to support the trial court's Finding of Fact No. 7 that the decree for Glenda Sue Buttrell nee Gibson was signed on or about June 24, 1991, and such finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. We agree.

 Although great deference must be given to the trial court's findings of fact, that deference will be given only in those instances in which findings of fact are supported by evidence found in the record. *See Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607 (Tex.1979); *County of El Paso*, 847 S.W.2d at 440; *Chitsey*, 558 S.W.2d at 581; *Page*, 548 S.W.2d at 802. The trial court's Finding of Fact No. 7 states that the decree was signed on or about June 24, 1991. We find that finding to be unsupported in that evidence in the divorce docket shows that the judgment was signed **January 24, 1991** rather than June 24, 1991. The record shows that Buttrell was questioned as follows:

Q. When did you finally get a divorce decree?

A. I believe it was the last week of January of 1991.

Q. That would have been some six months after the hearing?

A. That's right.

The testimony additionally established the following:

Q. When somebody signed or put in the date, the 24th of January or Jan., you also marked through the zero and put a one; isn't that correct, to make it 1991?

A. That is right.

It is clear from the evidence in the record that the decree for the Buttrell divorce was signed January 24, 1991 and not June 24, 1991. A simple examination of the divorce docket reveals that the date of signing is January rather than June. Accordingly, Appellant's Point of Error No. Six is sustained.

### 2. Points of Error Nos. One and Two

In Points of Error Nos. One and Two, Appellant asserts that the trial court erred in its Conclusions of Law Nos. 1 and 4 (dealing with the Buttrell and Caruso divorces) in that there is no evidence or insufficient evidence to support a conclusion that Appellant violated Rule 1.01(b)(1) and 1.01(b)(2) of the Texas Disciplinary Rules of Professional Conduct. We agree.

Rule 1.01, entitled, Competent and Diligent Representation, states:

(b) In representing a client, a lawyer shall not:

(1) neglect a legal matter entrusted to the lawyer; or

(2) frequently fail to carry out completely the obligations that the lawyer owes to a client or clients.

(c) As used in this Rule, "neglect" signifies inattentiveness involving a conscious disregard for the responsibilities owed to a client or clients.

The comments to Rule 1.01 dealing with section (b) state that a lawyer should act with competence, commitment, and dedication to the interest of the client and with zeal in advocacy upon the client's behalf. A lawyer should feel a moral or professional obligation to pursue a matter on behalf of a client with reasonable diligence and promptness despite opposition, obstruction, or personal inconve-

nience to the lawyer. TEX. DISCIPLINARY R. PROF. CONDUCT 1.1 cmt.6 (1989). With respect to the Buttrell Divorce, we find no evidence in the record to support the conclusion that Rule 1.01 was violated. In first examining Rule 1.01(b)(1), neglect is defined as an inattentiveness involving a conscious disregard for the responsibilities owed to a client or clients. Rule 1.01(b)(2) states that a lawyer shall not fail to carry out completely the obligations that the lawyer owes to a client. The record establishes that Appellant did not neglect Buttrell, but rather, completed the obligation to Buttrell by acquiring the sought-after divorce. The record further establishes that Appellant worked on Buttrell's case throughout the period between initial consultation and up to the point the divorce decree was signed. Buttrell first consulted Appellant in June of 1990. Appellant worked out a fee arrangement with Buttrell in order for her not to have to pay the whole amount at one time. Once she received the filing fee from Buttrell, she filed suit sometime after July of 1990. At or about that time, Appellant also sent a waiver off to Buttrell's husband. The hearing was held a few months later at the end of September 1990. After the hearing, Buttrell asked for changes to be made to the joint managing portion, and so Appellant redrafted the pleadings. Appellant then asked her employee to take it to the court to have it signed. Her employee took the divorce decree to the office of County Court at Law Judge, Judge Svanas, because the proposed decree reflected on its face that it was a case filed in that court. Judge Svanas was quite ill in the fall of 1990, and subsequently died in January 1991. Buttrell called Appellant's firm inquiring about how much she still owed Appellant and the status of the decree. Upon learning that the clerk's office did not have a divorce decree, Appellant questioned her employee and determined he had taken the decree to the wrong place. Appellant went to the courthouse the same day. Appellant went to Judge Svanas' former office area and found the boxes of papers from his office on the floor and took the extreme step of digging through the boxes of the deceased jurists and ultimately found the decree in question. Appellant took the decree to District Judge Gene Ater who promptly signed it. Arrangements were then made to get a copy to Buttrell.

As the above facts demonstrate, Appellant did not neglect the legal matter presented to her, to the contrary, she completed the obligation to her client. Upon receiving the decree, her client was satisfied with the decree and said it looked fine. We have considered the evidence that tends to support the findings of the trial court, disregarding all evidence and inferences to the contrary, and conclude that there is no evidence to support the findings of the trial court that Appellant violated Rule 1.01(b). Further, we have examined all the evidence and have determined that the findings of the trial court are so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we sustain Appellant's Points of Error Nos. One and Two in regard to the Buttrell divorce.

Points of Error Nos. One and Two additionally assert that the trial court erred in finding Appellant violated Rule 1.01(b) with regard to the Caruso divorce. Once again, we agree.

Our review of the record reveals that there was no evidence presented to establish that Appellant neglected the legal matter Caruso entrusted to her. To the contrary, Appellant did complete the obligations she owed to Caruso. The facts show that Caruso went to Appellant in November or December of 1988. At that time, it had been two and one-half years since Caruso had either seen her husband or he had supported her or their child. There was also the concern that Caruso's husband would kidnap the child, so special provisions would be needed for the divorce decree. Caruso did not know where her husband was and so Appellant prepared a citation by publication affidavit in December 1988, but Caruso ruled it out due to the expense. Caruso then notified Appellant that her husband was in prison in Arizona and so Appellant called the governor's office, board of pardon and paroles and corrections in Arizona, and tracked down the facility where the husband was located. The husband was served and he filed a written answer with the court which changed the na-

ture of the case from uncontested to contested. The original fee arrangement of $250 dollars was not changed. The divorce hearing was held on September 21, 1989. Brown was instructed to draft the divorce decree. Caruso called Appellant's office in October, November, and December 1989, and in January 1990, inquiring into the status of the decree. On February 1, 1990, Caruso filed a grievance against Appellant. The decree was signed on February 15, 1990. Five months elapsed from the date of the hearing granting the divorce and the signing of the divorce decree. The record confirms that the reason for the delay was the readiness in obtaining a transcript of the proceedings from the court reporter. The final divorce hearing occurred on September 21, 1989 before Judge Carol Gregg. At the time of the hearing, the Judge's father had just been taken to the hospital for emergency surgery and so the Judge accelerated the hearing and Appellant was unable to write down all the nonstandard and restrictive possessory conservator provisions regarding the child. The record shows that the provisions of the Caruso divorce were out of the ordinary and extremely restricted because most of them were tied to the child's age which essentially gave the maximum protection and as much control over visitation as possible. Appellant contacted the court reporter and asked him for a transcript to determine what all the conservator provisions were so that they could be incorporated in the divorce decree. The record shows that every few days, Appellant would check to see if the transcript was ready. In late November, the court reporter contacted Appellant and read to her the requested information concerning the conservator provisions. While Appellant waited for the information from the court reporter, she prepared the rest of the divorce decree and continued waiting for the special provisions. Appellant was then involved in a trial and subsequently became extremely ill with the flu. Appellant testified that she took the divorce decree to the judge on or about December 15, 1989, but was told the judge would not be back officially until after the first of the year. During the Christmas holidays and even after the first part of January, Appellant continued to check on the signing of the decree. Around January 7th or 9th, 1990, Appellant was advised that Caruso wanted to terminate her services and that Caruso was filing a grievance against Ms. Brown. While the divorce decree was not signed until February 15, 1990, the record shows that it was completely satisfactory to Caruso in protecting her and her child from her husband.

The above facts show that at no time did Appellant neglect the legal matter entrusted to her. The facts do show that Caruso was satisfied with the final decree and so Appellant did complete all her obligations to Caruso even after Appellant was notified by Caruso that her services were no longer needed. We have considered the evidence that tends to support the findings of the trial court, disregarding all evidence and inferences to the contrary, and conclude that there is no evidence to support the findings of the trial court. Further, we have examined all the evidence and have determined that the findings of the trial court are so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we sustain Appellant's Points of Error Nos. One and Two in regard to the Caruso divorce. Appellant's Points of Error Nos. One and Two are sustained in their entirety.

### 3. Points of Error Nos. Three and Four

In Points of Error Nos. Three and Four, Appellant contends that the trial court erred in certain conclusions of law because the trial court's findings of fact do not support them and there is no evidence or insufficient evidence to support a conclusion that Appellant violated Disciplinary Rules 7–101(A)(2) and 6–101(A)(3) of the Texas Rules of Professional Responsibility in the Buttrell and Caruso divorces.

An order of the Supreme Court dated October 17, 1989 adopted the new Rules of Professional Conduct and repealed the Code of Professional Responsibility effective January 1, 1990. TEX. GOVT.CODE ANN. art. 10, § X (Vernon Supp.1996). The order of the Supreme Court, in pertinent part, states:

It is further ordered that the professional conduct, prior to the effective date of this Order, of all attorneys licensed to practice

law in this state shall continue to be governed by the Texas Code of Professional Responsibility.

It is further ordered that the professional conduct on and after the effective date of this order, of all attorneys licensed to practice law in this state on and after the effective date of this order, shall be governed by the Texas Disciplinary Rules of Professional Conduct.

TEX.GOVT.CODE ANN. art. X, § 9 (Vernon Supp.1996).

Appellant commenced the representation of Buttrell in June 1990. The trial court erred as a matter of law in concluding that Appellant violated Rules 6–101 and 7–101 in conjunction with the Buttrell divorce because those rules had been repealed prior to the time Buttrell first visited Appellant.

In the Caruso divorce, Ms. Caruso first engaged the services of Appellant in November of 1988, during that period of time that the Rules of Professional Responsibility would be applicable to any misconduct on the part of Appellant.

▆ Rule 6–101(A)(3) states that a lawyer shall not **willfully** and **intentionally** neglect a legal matter entrusted to him. TEX. GOV'T CODE ANN. art. X, § 9, DR 6–101 (Vernon 1988). Rule 7–101(A)(2) states that a lawyer shall not **intentionally** fail to carry out a contract of employment entered into with a client for professional services. TEX. GOV'T CODE ANN. art. X, § 9, DR 7–101 (Vernon 1988). The violations of these two sections can only occur if there is something more than mere neglect or bad judgment and the neglect ·must be willful or intentional. Willful means something said or done deliberately or intentionally or following one's own will unreasoningly; obstinate; stubborn. WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (2d ed. 1979). Intentional is defined as having to do with intention or purpose or it is intended; designed; done with design or purpose; as, the act was intentional, not accidental. *Id.*

We have applied the facts of the instant case, as developed in the discussion of Points of Error Nos. One and Two above, and find that the trial court erred in finding that Appellant willfully or intentionally neglected a legal matter entrusted to her. The record is wholly devoid of any evidence that Appellant intentionally neglected a legal matter entrusted to her, as that term is defined above. To the contrary, the record does establish the efforts of an attorney attempting to rectify a situation and using diligence to do so. In Caruso's divorce, there was an excusable and justifiable reason why the divorce decree was not signed until February 15, 1990, and there was no evidence presented to show that any delay was caused by the intentional or otherwise willful conduct of Appellant. The record does establish, as noted above, that Appellant consulted with Caruso in November 1988; prepared a citation by publication affidavit in December 1988; called the governor's office, the board of pardon and paroles and corrections when trying to locate Caruso's husband; did not charge more when the divorce became contested rather than uncontested; and appeared at a hearing on Caruso's behalf in September 1989. Delay in having the divorce decree signed was attributed to the delay in obtaining a transcript of the proceedings, rather than the intentional or willful neglect on the part of Appellant. Accordingly, we sustain Appellant's Point of Error Nos. Three and Four in their entirety.

### 4. Point of Error No. Five

Appellant's Point of Error No. Five alleges that there is no evidence to support the trial court's Finding of Fact No. 6 that Appellant told Buttrell that the judge was engaged in an election and she could not get her to sign the decree.

We find no evidence in the record to substantiate the trial court's finding that Appellant told Buttrell that the judge was engaged in an election and she could not get "her" to sign the decree. The record reveals that Buttrell herself stated that the reason for the· delay that she remembers was the remarks made by Appellant that the excuse for why it was taking so long was, ·"the Court was behind in the paper work, the Judge had misplaced the papers, just things like that." Other evidence shows that there is no evidence showing that Appellant could not get

"her" to sign the decree because all the judges involved were male. The judge of the court in which the case was pending was Judge Svanas, a male. This particular judge eventually died and therefore was unable to sign the divorce decree. The judge who heard the case was Judge Lewis, a male, and the judge who eventually signed the decree in January was Judge Ater, a male.

We have considered the evidence that tends to support the findings of the trial court, disregarding all evidence and inferences to the contrary, and conclude that there is no evidence to support the trial court's Finding of Fact No. 6 that Appellant told Buttrell that the judge was engaged in an election and she could not get her to sign the decree. Further, we have examined all the evidence and have determined that the trial court's Finding of Fact No. 6 is so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we sustain Appellant's Point of Error No. Five.

### 5. Point of Error No. Seven

Appellant's Point of Error No. Seven states that the trial court's Finding of Fact Nos. 10 and 12 are contrary to the overwhelming weight of the evidence and that there is insufficient evidence to support the same with respect to any finding which states, assumes or implies that a failure of Caruso to receive child support payments from her divorced husband was due to delay in the date of entry of the decree of divorce and/or was the cause of the inquiries about the decree of divorce. Once again, we agree.

While the record reveals that Caruso did contact Appellant during the months of October, November, December, and January, it does not show that the reason for the contact was in pursuit of child support. The record reflects that for the prior two and one-half years before filing the divorce, Caruso's husband did not support her or her child. Appellant testified that Ms. Caruso was not even interested in child support but just wanted to terminate the marriage. Appellant testified:

> When she first came in she was looking at ultimate termination. She hadn't gotten child support in a long time. She wasn't even interest in how it was calculated. She mainly wanted him out of her life and initially, she was a little concerned if she asked for child support it would get him back in.
>
> I was the one who convinced her asking for child support, if she's really concerned this guy is possibly some day going to show up on her door step, is the best way to at least give you some kind of hook to have control on the situation when he shows up and when you eventually remarry, which she was young and pretty and had a boyfriend and stuff, I assumed she would. If he wants to adopt the child it gives you grounds for termination when he hasn't paid all the support.

Ms. Caruso has failed to establish any harm suffered by the fact that the divorce decree was signed on February 15, 1990, because the judge stated in the decree that child support shall begin October 5, 1989, which was less than one month following the hearing, and Ms. Caruso had not received any financial contribution for herself or her child for the previous two and one-half years following the initial contact with Appellant. Accordingly we sustain Appellant's Point of Error No. Seven.

### 6. Point of Error No. Eight

Appellant's eighth point of error states that the evidence is factually insufficient evidence to support the trial court's Finding of Fact No. 5 that Buttrell made several inquiries concerning the entry of a decree. We disagree.

The record does reflect that in fact several phone calls were made to Appellant's office by Buttrell. "Several," is simply defined as a number more than two, but not many, a few. WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (2d ed. 1979). Appellant stated that there were three calls in January, once between then (October) and January, and the next was on January 7. Buttrell stated that she called Appellant's office many times, maybe as many as ten times. In a finding of fact, the Judge could determine which number was more plausible than the other, but in either case, whether the testimony of Appel-

lant is believed or that of Buttrell, the number meets the definition of several. Accordingly, Appellant's Point of Error No. Eight is overruled.

### 7. Points of Error Nos. Nine and Ten

Appellant's Point of Error No. Nine claims there is no evidence or factually insufficient evidence to support Appellant's public reprimand for acts constituting misconduct while acting in her capacity as an attorney at law in the State of Texas. Appellant's Point of Error No. Ten asserts that the trial court erred in finding violations of Disciplinary Rules 6–101(A)(3) or 7–101(A)(2) when there is no evidence to support the allegation that any occurred prior to January 1, 1990, the date of the repeal of the Texas Rules of Professional Responsibility.

In the case of complainant Buttrell, there is no evidence of any contract of employment or professional relationship with Appellant before January 1, 1990, and there are no pleadings alleging a violation of these disciplinary rules with respect to her. In the case of complainant Caruso, there is no finding with respect to the date, before or after January 1, 1990, when the alleged violations of the above-stated disciplinary rules are to have occurred. Also, there is no evidence or insufficient evidence that a violation occurred after January 1, 1990. We sustain Appellant's Points of Error Nos. Nine and Ten.

Having overruled Appellant's Point of Error No. Eight, but having sustained all other remaining points, we find that Appellant did not violate rules 6–101(A)(3) or 7–101(A)(2) of the Texas Code of Professional Responsibility, and further, that Appellant did not violate Rule 1.01(b) of the Texas Disciplinary Rules of Professional Conduct. Accordingly, we find that the trial court erred in ordering that Appellant be publicly reprimanded for violations of the rules. We reverse the judgment of the trial court, and render judgment in favor of Appellant.