COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| CECILIA IBARRA, | § | No. 08-20-00025-CV |
| | | |
| Appellant, | § | Appeal from the |
| | | |
| v. | § | County Court at Law No. 3 |
| | | |
| NOAH'S ROOFING & CONTRUCTION, | § | of El Paso County, Texas |
| | | |
| Appellee. | § | (TC# 2017DCV2199) |

## O P I N I O N

In this case involving a roofing and repairs contract, the trial court rendered a judgment in favor of appellee Noah's Roofing & Construction (Noah's Roofing) against appellant Cecilia Ibarra, based on her non-payment of contract terms. On appeal, Ibarra challenges the trial court's adverse judgment, claiming the evidence at trial overwhelmingly established that Noah's Roofing committed a prior, material breach. Thus, she asserts that Noah's Roofing's material breach of the contract discharged her from her obligation to perform. Finding no error, we affirm.

## I.  BACKGROUND

On December 20, 2016, Ibarra entered into a written contract with Noah's Roofing for the installation of a 30-year shingled roof system and additional repairs to the interior of her home. The contract expressly provided that all repairs would be performed for "all insurance proceeds."

Among payment terms, the contract included an accrual of interest at the rate of 1.5% per month for amounts due. If collection efforts were undertaken, contract terms also provided for court costs and reasonable attorney's fees incurred. Lastly, if payment was not made for work performed then the warranty provided by the contract would be void.

Noah's Roofing utilized an estimating software to itemize charges. The estimate included a detailed description of the work to be done, room by room, and accompanying cost. The total estimate of work amounted to $12,507.41. However, the contract allowed for a discount for $1,000 for "advertising yard sign."

After Noah's Roofing began work on Ibarra's home it took about a week to complete the work. On January 27, 2017, Ibarra certified in writing that Noah's Roofing had completed the work to her satisfaction and according to contract terms. During trial, Ibarra did not contest that she signed the certification; instead, she asserted that she remained dissatisfied with certain portions of the work performed. She also asserted that workers continued working on her home for two more workdays after the date of her certification.

Upon work completion, Ibarra did not pay any amount due on the contract. After hiring a lawyer, Noah's Roofing sent a formal demand for payment of the amount due, plus interest owed to date, and a charge of $300 for attorney's fees.[1] The demand letter also referenced the contract signed by Ibarra whereby it stated the contract called for accrual of 1.5% interest per month on past due amounts, along with court costs and attorney's fees.

Having received no response, Noah's Roofing then filed suit against Ibarra alleging claims

---

[1] The demand letter asserted a total amount owed of $11,537.48, which included $10,575.16 due on the final invoice, $662.32 due for interest owed to date, and $300 due for attorneys' fees incurred to date. The letter included a copy of the final invoice, dated January 9, 2017, showing a balance due of $10,575.16. The invoice further showed the insurance approved $12,283.60 for installation of a roof system and related repairs. From approved charges of $12,283.60, the invoice included two deductions: first, Noah's Roofing waived Ibarra's deductible of $1,014; and second, it deducted a charge of $694.44 for garage repairs not completed.

of breach of contract and quantum meruit. Noah's Roofing sought actual damages, prejudgment interest, attorney's fees, court costs, and post-judgment interest. Acting pro se, Ibarra filed a general denial. Noah's Roofing later filed a motion for summary judgment, which the trial court granted on February 1, 2018. Ibarra then retained counsel and promptly filed a motion for new trial, which was eventually granted.

In November 2018, nearly two years after work on Ibarra's home was completed, Fernando Anaya—co-owner of Noah's Roofing—learned for the first time that Ibarra was dissatisfied with the work performed on her home. Anaya conducted a walk-through of Ibarra's home with Ibarra also present. During the walk-through, Ibarra pointed out her complaints with the work done on her property. Ibarra later filed a second answer and affirmative defenses alleging Noah's Roofing materially breached the contract prior to any breach by her. She asserted she was discharged from her obligations under the contract. Ibarra also filed a counterclaim alleging a breach of warranty.

Prior to trial, the trial court ordered Ibarra to deposit into the registry of the court as much of the insurance proceeds as she had received for her insurance claim on her roof. The court's order identified the amount of proceeds was $7,828.12. It also authorized Ibarra to make additional deposits when she received funds from the United States Department of Agriculture or when she was otherwise able to make up the difference. Thereafter, Ibarra filed a notice of deposit of $7,728.12, and further explained that $2,211.68 of funds she had received from her insurance company had been retained by the Department of Agriculture without explanation. By later order, the trial court ordered the Department of Agriculture to turn over to the clerk of the court, for deposit into the registry under this cause number, the sum of $2,211.68. Ibarra later gave notice of deposit of that sum into the registry.

On October 25, 2019, the trial court held a bench trial and heard testimony from Anaya,

Ibarra, and Ibarra's son—Steven Chavez. Both sides also admitted several exhibits. From Noah's Roofing, exhibits included the contract signed by Ibarra, the final invoice it sent to her, the certification she signed, the attorney demand letter, and one photograph taken at the home. Ibarra's exhibits included her claim policy with State Farm and multiple photographs of the interior of her home.

Ruling from the bench, the trial court entered a judgment in favor of Noah's Roofing. In the signed judgment, the trial court awarded Noah's Roofing $10,575.16 in damages, $5,043.05 as pre-judgment interest, $8,500 as attorney's fees, $435.28 as court costs, and post-judgment interest at the rate of 18% per year. The trial court also ordered that Ibarra take nothing on her counterclaim. The judgment also ordered the clerk of the court to release the proceeds deposited in the registry of the court to Noah's Roofing.

As requested, the trial court later filed Findings of Fact and Conclusions of Law. Among the findings of fact, the trial court included the following pertinent findings:

3. On January 27, 2017, Ibarra certified in writing that Noah's Roofing had completed all the contracted work to her satisfaction and that the installation(s), service(s), and or repair(s) had been completed according to the contract.

4. Despite her certification, Ibarra refused to pay Noah's Roofing for the work completed.

The court's conclusions of law, in their entirety, provided as follows:

1. The parties entered into a valid and enforceable contract.

2. Noah's Roofing performed its contractual obligations.

3. Ibarra materially breached the Parties' contract.

4. Noah's Roofing is excused from performing any warranty obligations it may have had.

5. Noah's Roofing suffered injury and is entitled to recover the following damages from Defendant Ibarra:

4

a. $10,575.16 in actual damages;
   b. Pre-judgment interest, calculated from March 1, 2017 through October 24, 2019 is $5,043.05
   c. $8,500.00 in attorney's fees;
   d. $435.28 in Court costs; and
   e. Post judgment interest at the rate of 18% per year.

6. All conditions precedent to Noah's Roofing's right to recover were met.

7. Noah's Roofing did not materially breach the Parties' contract.

8. Noah's Roofing did not breach any warranty under the Parties' contract.

9. Noah's Roofing did not violate the Texas Deceptive Practices & Consumer Protection Act.

10. Ibarra shall take nothing from her claims against Noah's Roofing.

11. Noah's Roofing is entitled to all monies that Ibarra deposited into the Registry of the Court.

This appeal followed.

## II. ISSUES ON APPEAL

Ibarra asserts three issues on appeal, which all contend, in some manner or form, that the trial court erred by wrongly concluding that Noah's Roofing did not breach the contract *first* by performing the contract in a non-workmanlike manner. Ibarra's issues on appeal are stated as follows:

(1) Conclusions of Law numbers 2 & 7 that Appellee performed its contractual obligations and did not materially breach the parties' contract are legally incorrect since the evidence shows overwhelmingly that Appellee did its work in an unworkmanlike manner, thus breaching the contract.

(2) Conclusion[] of Law number 3 is legally incorrect because the overwhelming weight of the evidence shows that Appellant was relieved from her obligation to pay Appellee because of Appellees' prior material breach of the contract.

(3) Conclusions of Law numbers 4 and 8 are legally incorrect because the overwhelming weight of the evidence shows that the Appellee was first to materially breach the contract because of its sloppy work which breached legally implied warranties. Appellee's breach was the first and relieved

5

Appellant of any further obligations on the contract including payment.

In briefing, the parties' address the issues collectively. Because we note the issues overlap with each other, we follow suit.

### III. DISCUSSION

#### A. Standard of review

We review a trial court's conclusions of law de novo to determine if the trial court drew the correct legal conclusions from the facts. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *Id.* If we determine a conclusion of law is erroneous, but the trial court otherwise rendered the proper judgment, we will not reverse it even if the trial court's conclusions of law are incorrect. *Moran v. Mem'l Point Prop. Owners Ass'n, Inc.*, 410 S.W.3d 397, 402 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

"Legal sufficiency challenges question the existence of any evidence to support a particular finding, and essentially claim the evidence at trial can point to only one legal outcome—that is, the opposite of the outcome made by the fact finder." *Pearl Res. LLC v. Charger Servs., LLC*, 622 S.W.3d 106, 114 (Tex. App.—El Paso 2020, pet. denied) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)). "Factual sufficiency points of error concede conflicting evidence on an issue, yet maintain that the evidence against the jury's finding is so great as to make the finding erroneous." *Raw Hide Oil & Gas, Inc. v. Maxus Expl. Co.*, 766 S.W.2d 264, 275 (Tex. App.—Amarillo 1988, writ denied). Legal and factual sufficiency challenges are similar to one another, but each requires different treatment by an appellate court.

### 1. Legal sufficiency

When the party who has the burden of proof challenges the legal sufficiency of an adverse finding, it must demonstrate "that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). This requires the appellate court to examine the record first for evidence that supports the trial court's finding, while ignoring all other evidence to the contrary. *Id.* "The final test for legal sufficiency must always be whether the evidence at trial would enable [a] reasonable and fair-minded [fact finder] to reach the [finding] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

### 2. Factual sufficiency

A trial court's findings of fact are treated with the same force and dignity as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When challenged, a trial court's findings of fact are not conclusive if, as here, there is a complete reporter's record on appeal. *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 208 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *BMC Software,* 83 S.W.3d at 795). However, when an appellant fails to challenge the trial court's findings of fact by a point of error on appeal, the appellate court is bound by them. *Pearl Res. LLC*, 622 S.W.3d at 114 (citing *Brown v. The State Bar of Texas*, 960 S.W.2d 671, 674 (Tex. App.—El Paso 1997, no writ)).

In challenging the factual sufficiency of findings on which the appellant had the burden of proof at trial, it must show that the finding of fact at issue goes against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. This challenge requires the appellate court to weigh all the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). But, we must first look to the record to determine whether some evidence exists to support the finding. *Dow Chem. Co.*, 46 S.W.3d at 241-42. When there is some evidence to support the

adverse finding, we then determine whether the "finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the great preponderance of the evidence supports" the absence of the finding. *Castillo v. U.S. Fire Ins. Co.*, 953 S.W.2d 470, 473 (Tex. App.—El Paso 1997, no writ).

**B. Analysis**

Collectively, Ibarra argues against the trial court's conclusions that Noah's Roofing performed its contractual obligations, that Ibarra materially breached the contract, that Noah's Roofing was excused from performing any warranty obligations, and that Noah's Roofing did not materially breach the contract or breach any warranty under the contract. Relevant to these conclusions, the trial court made findings of fact that Ibarra certified in writing that Noah's Roofing completed all contracted work to her satisfaction, but yet, she refused to pay for the contracted work. Although Ibarra does not explicitly challenge these findings with her list of issues, her argument implicitly challenges the conclusions the court drew from the evidence. From our review, however, we conclude the record in this instance contains sufficient evidence to support the trial court's factual findings and conclusions of law.

A breach of contract claim requires proof of four elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Houle v. Casillas*, 594 S.W.3d 524, 556 (Tex. App.—El Paso 2019, no pet.).

Here, Ibarra's answer and counterclaim raised the affirmative defense that Noah's Roofing first committed a material breach of contract that discharged her contractual obligations. When one party to a contract commits a material breach of that contract, the other party is discharged or excused from further obligation to perform. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134

8

S.W.3d 195, 196 (Tex. 2004). An affirmative defense is a matter asserted in avoidance of a party's argument or position, rather than a matter asserted in denial of that party's position. *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991). The party asserting an affirmative defense bears the burden of pleading and proving its elements. *See Welch v. Hrabar*, 110 S.W.3d 601, 606 (Tex.App.—Houston [14th Dist.] 2003, pet. denied).

Determining whether a breach is material is a question of fact that looks at several factors. *Mustang Pipeline Co.*, 134 S.W.3d at 199. These factors are: (1) the extent to which the injured party will be deprived of the reasonably expected benefit; (2) the extent the injured party can be adequately compensated for the deprived benefit; (3) the extent the party that failed to perform or to offer to perform will suffer forfeiture; (4) the likelihood the party failing to perform or to offer to perform will cure the failure; (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. *Id.*

At trial and on appeal, Ibarra did not contest the fact that she did not pay Noah's Roofing according to the contract. Instead, Ibarra asserted she was excused from payment because Noah's Roofing materially breached the contract first by completing the work in a sloppy and unworkmanlike manner. At trial, Ibarra shouldered the burden of proving that Noah's Roofing materially breached the contract first. *Welch*, 110 S.W.3d at 606.

Ibarra argues she presented evidence of non-matching paint on the walls and argues it showed Noah's Roofing was first to materially breach the contract. Additionally, she asserts some work in the closet had not been done. Responding, Anaya testified that Ibarra had certified the work as being completed to her satisfaction. He testified that Noah's Roofing did not receive any complaints from her until November 2018, after the lawsuit was filed. He then visited her home. She made no complaint about the roof repair and certain areas of the work. For interior work, she

9

raised pointed complaints about work not being completed in a closet or for items he determined were not included in the scope of the contract. Anaya agreed with her about the closet in that a baseboard was not replaced and the carpet was not cleaned. The undone work amounted to a total charge of $74.38. He testified that he had offered to complete it but she would not allow further entry into her home.[2] He also acknowledged that Ibarra had made complaints during the walk-through claiming that certain paint colors did not match once the paint dried.

But, even so, Anaya testified, and the trial court found, that Ibarra had certified in writing that Noah's Roofing completed the contracted work to her satisfaction. On review of the record, Ibarra's testimony is contradictory when explaining her reason for signing the certification. She states she would have never signed the certification if the paint had looked the way it did in the pictures, if the ceiling looked the way it did, and if the window looked the way it did. She testified the paint had not yet dried when she signed the certification. Second, she claimed she signed the certification anyway because a worker asked her to do so. Ibarra testified that he told her, "If you don't sign it -- it's Friday -- I won't get paid for it." As the trier of fact, the trial court remained free to credit or not credit all or part of Ibarra's testimony.

Ibarra additionally argues that Noah's Roofing breached the implied warranty of good and workmanlike manner in support of her argument of a material breach of contract. Good and workmanlike is the quality of work performed by one who had the knowledge, training, or experience necessary for the successful practice of the occupation and performed in a manner that

---

[2] Anaya described they were willing to go back and complete the work, but Ibarra would not allow Noah's Roofing back into her house. Additionally, Anaya had acknowledged that Ibarra complained about the paint not matching the wall. On cross-examination, Anaya acknowledged some variations in color when presented with photographs taken by Ibarra. However, there was evidence presented that the photographs Ibarra produced showing variations in paint were taken either three weeks before work by Noah's Roofing began work on her home or nearly two years after Noah's Roofing completed the work. Although Ibarra testified no work had been done on the house since Noah's Roofing completed the work, the trial court was able to resolve the conflicting evidence and make credibility determinations.

is considered proficient by those capable of judging such. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). It is not required that the performer of the work guarantee the results of the work. *Id.* at 355. The purpose of the implied warranty is to protect the helpless consumer who does not know enough technically to test or judge the work. *DiMiceli v. Affordable Pool Maint., Inc.*, 110 S.W.3d 164, 172 (Tex. App.—San Antonio 2003, no pet.). The implied warranty focuses on a worker's conduct and defines the level of performance expected in instances where the parties do not make express provisions for such performance in their contract. *Centex Homes v. Buecher*, 95 S.W.3d 266, 273-74 (Tex. 2002).

Ibarra did not present any evidence to show Noah's Roofing performed the work in a manner that was not considered proficient by those capable of judging such work. *Melody*, 741 S.W.2d at 354. Ibarra relies on a case from our sister court of appeals in Dallas to assert that work done in an unworkmanlike manner is a breach of contract. *See Cooper Concrete Co. v. Hendricks,* 386 S.W.2d 221, 223 (Tex. App.—Dallas 1965, no writ). In *Cooper*, the issue raised on appeal questioned how to assess damages where the party alleged and the jury found that a bomb shelter was constructed in an unsuitable manner. *Id.* We conclude, however, that Ibarra's reliance on *Cooper* is unpersuasive. Unlike *Cooper*, the trial court in this instance did not make such a finding. *Id.* Furthermore, Ibarra's testimony that the work performed was "shoddy," and not otherwise to her satisfaction, does not alone carry her burden of persuasion to show a breach of the implied warranty.

In sum, it is clear the trial court believed Noah's Roofing had substantially completed all work according to contract terms, and yet, Ibarra failed to pay for any of the completed work. Based on this record, the trial court was able to find the incomplete work of the closet and her disapproval of certain paint when dry—when viewed in context with all other work completed to

11

Ibarra's satisfaction—did not constitute a material breach of the contract as a whole. This conclusion was supported by the evidence. From this record, we cannot say that Ibarra carried her appellate burden to show the evidence was legally insufficient to support the trial court's judgment.

Additionally, because there was sufficient evidence to support the trial court's findings, we further find the evidence was factually sufficient to support the judgment. Weighing all the evidence of the record, the findings of fact are not so against the great weight and preponderance as to be clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772. Given we uphold the factual sufficiency of the evidence, we need not otherwise give details of all supporting evidence of record. *Apodaca v. Rios*, 163 S.W.3d 297, 304 (Tex. App.—El Paso 2005, no pet.). Notwithstanding Ibarra's failure to explicitly challenge the trial court's findings of fact, we conclude the trial court's judgment is supported by both legally and factually sufficient evidence. We cannot say on this record that the trial court erred in concluding that Noah's Roofing had completed its contractual obligations such that it did not materially breach the contract first.

For these reasons, we overrule Ibarra's first, second, and third issues.

## IV.  CONCLUSION

The trial court's judgment is affirmed.


GINA M. PALAFOX, Justice

August 17, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.