**CAMERON COUNTY DRAINAGE DISTRICT NO. 5, Appellant,**

v.

**Pablo S. GONZALES and Lucila E. Gonzales, Appellees.**

No. 13–00–517–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 21, 2002.

B.R. Dossett, Harlingen, for Appellant.

Ernesto Gonzales, Harlingen, for Appellee.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

This is a condemnation case. Cameron County Drainage District No. 5, appellant, ("the County") appeals a jury award of $141,550.00 made to Pablo S. and Lucila E. Gonzales, representing the value of a taking done by the County. The County challenges the evidence supporting the amount of damages and contends the damages were excessive. We affirm.

The County acquired 3.287 acres of a larger tract of land owned by the Gonzaleses by exercising its right of eminent domain through condemnation proceedings. A jury was asked to place a value on the taking effected by the County. The jury awarded the Gonzaleses $141,550.00, representing $24,000.00 for a house located on the tract taken, $3,050.00 for the cost of relocating a water line, and $65,200.00 representing diminution in value of the remainder. The County challenges here only the $65,200.00 finding representing the diminution in value of the Gonzales's land after the taking.

In Texas, condemnation proceedings are part administrative and part judicial. *Duncan v. Calhoun County Navigation Dist.*, 28 S.W.3d 707, 709 (Tex.App.—Corpus Christi 2000, pet. denied). If an entity with eminent domain authority wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages, the condemning entity may begin a condemnation proceeding by filing a petition in the proper court. TEX. PROP.CODE ANN. § 21.012(a) (Vernon 1984). The judge of a court in which a condemnation petition is filed or to which an eminent domain case is assigned must then appoint three disinterested "freeholders" who reside in the county to serve as special commissioners to assess the damages of the owner of the property to be condemned. *Id.* § 21.014. After holding a hearing and receiving evidence, the special commissioners assess the amount of damages incurred by the property owner. *Id.* §§ 21.014, 21.015, 21.042. A party to a condemnation proceeding objecting to the findings of the special commissioners may file a written statement of the party's objections with the court that has jurisdiction over the proceeding. *Id.* § 21.018(a). If such an objection is filed, the court must cite the adverse party and try the case in the same manner as other civil causes. *Id.* § 21.018(b).

Both the United States and Texas Constitutions require governments to compensate landowners for takings of their property for public use. U.S. CONST. amend. V (requiring "just compensation"); TEX. CONST. art. 1, § 17 (requiring "adequate compensation"); *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex.2001). A condemnation lawsuit involves two major issues: the validity of

the taking and the amount of damages. *Duncan,* 28 S.W.3d at 710. Appellant here contests only the amount of damages awarded as damage to the remainder of the landowner's property.

■ The central issue regarding damages in the typical condemnation case is how to measure the market value of the condemned property. *Sharboneau,* 48 S.W.3d at 182. When an entire tract of property is condemned, the landowner is entitled to payment of the local market value of the property. TEX. PROP.CODE ANN. § 21.042(b) (Vernon Supp.2002). "Market value is 'the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.'" *Sharboneau,* 48 S.W.3d at 182 (quoting *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 979, 980 (1936)).

■ When only part of a person's property is taken, however, the constitution requires adequate compensation both for the part taken and "severance damages" to the remainder. *State v. Schmidt,* 867 S.W.2d 769, 772 (Tex.1993). Section 21.042(c) of the Texas Property Code provides:

> If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property.

TEX. PROP.CODE ANN. § 21.042(c) (Vernon Supp.2002). The Texas Supreme Court "has long held that the measure of compensation in a partial-takings case is the market value of the part taken plus damage to the remainder caused by the condemnation." *Westgate, Ltd. v. State,* 843 S.W.2d 448, 456 (Tex.1992) (citing *Buffalo*

*Bayou, Brazos and Colorado R. Co. v. Ferris,* 26 Tex. 588, 603–04 (1863)). In all cases, the landowner is entitled to at least the market value of the part taken, even if the condemnation actually increases the value of the remainder. *Id.* When the tract taken is of an irregular shape, as in this case, the preferable formula for calculating the damages is (1) the market value of the part taken, considered as severed land; (2) the market value of the entire tract before the taking; and (3) the market value of the remainder after the taking, giving consideration to the uses to which the condemned part is to be subjected. *Id.* (citing *Uselton v. State,* 499 S.W.2d 92 (Tex.1973)). "Under this approach, the total measure of damages is usually the difference between questions 2 and 3; however, if this difference is less than the answer to question 1 (indicating that the condemnation increased the value of the remainder), the landowner is entitled to the market value of the part taken." *Id.* It is appropriate to submit these issues in broad form to the jury. *Id.* at 457–58.

■ We construe the County's issues as challenges to the legal and factual sufficiency of the evidence. The standards for legal and factual sufficiency of evidence are well established. In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *M. Rivas Enter., Inc. v. Gaytan,* 24 S.W.3d 402, 403 (Tex.App.—Corpus Christi 2000, pet. denied). If any evidence of probative force exists to support the jury's finding we must overrule the point and uphold the finding. *In re King's Estate,* 244 S.W.2d at 661–62. A no evidence

point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L.REV. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996).

 In reviewing the factual sufficiency of the evidence, we examine all the evidence in the record, and will set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The evidence is insufficient to support a fact finding if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993). If a court of appeals reverses a jury finding for factual insufficiency, the court of appeals must "clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust." *Pool*

*v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

 We hold the evidence offered at trial is both legally and factually sufficient to support the jury's finding. This Court has already noted that an owner, although a lay witness, may testify about the value of his real property if he can show a basis for his knowledge. *Mercier v. MidTexas Pipeline Co.,* 28 S.W.3d 712, 721 (Tex.App.—Corpus Christi 2000, pet. denied) (citing *Barraza v. Koliba,* 933 S.W.2d 164, 169 (Tex.App.—San Antonio 1996, writ denied); *Burford Oil Co. v. Wadley,* 41 S.W.2d 689, 694 (Tex.Civ. App.—El Paso 1931, writ ref'd)). In *Mercier,* we noted that this Court "will not disturb a trial court's decision to allow a lay witness to testify about the market value of his property unless a clear abuse of discretion is shown." *Id.* While the question here goes to how much weight may be afforded to that testimony and not whether it may be admitted at all, we think our holding in *Mercier* is instructive. If a landowner is competent to offer relevant testimony regarding the value of his own property, then that testimony should be sufficient upon which to base a jury finding, especially when, as here, the landowner testifies that he is experienced in buying and selling property in the geographical region and general time period at issue in this case.

Pablo Gonzales testified that he buys and sells real estate as a vocation, though he also harvests cotton. At the time of trial, he owned about fifteen properties totaling roughly fifty acres of land. All his property is owned for investment purposes. He testified that he bought the ten acre tract of land at issue in this suit in 1984, intending to eventually subdivide it. He testified that many improvements had occurred in that area since 1984, including businesses moving in, improved road ac-

cess and improved drainage. Gonzales testified that his personal residence is located approximately 1.25 miles from the ten acre tract.

Gonzales testified that he has done some subdividing in the general area of the tract of land at issue in this suit, and testified regarding various sales and purchases of real property he has made in the area. Specifically, Gonzales testified that roughly two years prior to the trial, he sold a one-half acre tract in that area for $12,000.00. He also testified that a few months prior to trial he sold four one-half acre tracts of land in the area for $20,000.00 per acre.

Gonzales's opinion was that the ten acre tract at issue in this suit was worth $150,000.00. He testified that removing the 3.2 acre tract from the ten acre tract made the remainder less attractive for subdivision. He testified that after taking the 3.2 acres from the ten acre tract, the value of the remainder would drop to only approximately $15,000.00. The jury's findings were well within Gonzales's valuations. Moreover, although the County offered evidence contradicting Gonzales's valuations of the property, that evidence was not so overwhelming that we would hold the jury was unreasonable in making findings that were consistent with Gonzales's testimony and not with the County's evidence. Accordingly, we hold the evidence was sufficient to support the jury's damages findings and affirm the judgment of the trial court.