ACCEPTED
13-15-00059-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
5/12/2015 4:46:14 PM
DORIAN RAMIREZ
CLERK

**ORAL ARGUMENT REQUESTED**

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
5/12/2015 4:46:14 PM
DORIAN E. RAMIREZ
Clerk

**NO. 13-15-00059-CV**

# IN THE COURT OF APPEALS
## FOR THE THIRTEENTH DISTRICT
## AT CORPUS CHRISTI, TEXAS

**MATHEW ALEXANDER, M.D., INDIVIDUALLY AND AS PRESIDENT OF SOUTH TEXAS BRAIN AND SPINE CENTER,**
Appellant,

**v.**

**DARLENE GARZA,**
Appellee.

**On Appeal from County Court at Law No. 1, Nueces County, Texas**
**Cause No. 2012-CCV-61201-1**
**(Hon. Robert J. Vargas)**

## REPLY BRIEF OF APPELLANT

Respectfully submitted,

**COOPER & SCULLY, P.C.**
**DIANA L. FAUST**
diana.faust@cooperscully.com
Texas Bar No. 00793717
**R. BRENT COOPER**
brent.cooper@cooperscully.com
Texas Bar No. 04783250
**KYLE M. BURKE**
kyle.burke@cooperscully.com
Texas Bar No. 24073089
900 Jackson Street, Suite 100
Dallas, Texas 75202
(214) 712-9500
(214) 712-9540 (fax)

**ATTORNEYS FOR APPELLANT**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES .................................................................................... ii

ARGUMENT AND AUTHORITIES IN REPLY ....................................................1

I.    Objection to Appellee's Statement of Facts and Motion to Strike .................1

II.   Appellee's Report Was Untimely...................................................................2

      A.    Appellee First Asserted a Health Care Liability Claim Against
            Appellant in the Original Petition .......................................................2

      B.    *Zanchi v. Lane* Supports That 120-day Period for Service of
            Expert Report Began Running when Appellant Was Named and
            Sued in the Original Petition ...............................................................8

      C.    Dr. Mathew Alexander Was Named in the Original Petition;
            Alternatively, Appellee Simply Misnamed Him..................................9

      D.    Appellee's Expert Report Faxed After 5:00 p.m. Was Late;
            There Is No Due Diligence Exception for Service of Expert
            Reports ...............................................................................................14

III.  There Is Legally and Factually Insufficient Evidence to Support the
      Trial Court's Findings of Fact and Conclusions of Law .............................21

CONCLUSION & PRAYER .................................................................................24

CERTIFICATE OF COMPLIANCE ....................................................................26

CERTIFICATE OF SERVICE .............................................................................27

i

# TABLE OF AUTHORITIES

**Case**                                                                                                  **Page(s)**

*AmeriPath, Inc. v. Hebert*,
447 S.W.3d 319 (Tex. App.—Dallas 2014, pet. denied) .................................. 10

*Badiga v. Lopez*,
274 S.W.3d 681 (Tex. 2009) ............................................................. 18, 20, 24

*Bioderm Skin Care, LLC v. Sok*,
426 S.W.3d 753 (Tex. 2014) ............................................................... 7

*Brown v. The State Bar of Texas*,
960 S.W.2d 671 (Tex. App.—El Paso 1997, no writ) ..................................... 22

*Burchinal v. PJ Trailers-Seminole Mgmt. Co., LLC*,
372 S.W.3d 200 (Tex. App.—Texarkana 2012, no pet.) .................................. 11

*Cameron County Drainage Dist. No. 5 v. Gonzales*,
69 S.W.3d 820 (Tex. App.—Corpus Christi 2002, no pet.) ............................. 23

*Carlisle v. Philip Morris, Inc.*,
805 S.W.2d 498 (Tex. App.—Austin 1991, writ denied) .................................. 2

*City of Corpus Christi v. Taylor*,
126 S.W.3d 712 (Tex. App.—Corpus Christi 2004, pet. withdrawn) ............... 22

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ............................................................. 21, 22

*Daybreak Comm. Servs., Inc. v. Cartrite*,
320 S.W.3d 865 (Tex. App.—Amarillo 2010, no pet.) .......................... 3, 12, 13

*Dezso v. Harwood*,
926 S.W.2d 371 (Tex. App.—Austin 1996, writ denied) .................. 6, 10, 11, 12

*Douglas v. KPH Consolidation, Inc.*,
No. 14-12-01016-CV, 2013 WL 5883852
(Tex. App.—Houston [14th Dist.] Oct. 31, 2013, no pet.) ................................. 4

*Enserch Corp. v. Parker*,
794 S.W.2d 2 (Tex. 1990) ............................................................................ 11

*Espeche v. Ritzell*,
123 S.W.3d 657 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) .............. 4

*Estate of Regis v. Harris Cnty. Hosp. Dist.*,
208 S.W.3d 64 (Tex. App.-Houston [14th Dist.] 2006, no pet.) ...................... 18

*F.R. Hernandez Constr. & Supply Co., Inc. v. Nat'l Bank of Commerce of Brownsville*,
578 S.W.2d 675 (Tex. 1979) ....................................................................16, 17

*Harrell v. Alvarez*,
46 S.W.3d 483 (Tex. App.—El Paso 2001, no pet.) ........................................ 16

*Hayes v. Carroll*,
314 S.W.3d 494 (Tex. App.—Austin 2010 no pet.)........................................... 3

*Herrera v. Seton Nw. Hosp.*,
212 S.W.3d 452 (Tex. App.—Austin 2006, no pet.)........................................ 15

*Huntley v. Enon Ltd. P'ship*,
197 S.W.3d 844 (Tex. App.—Fort Worth 2006, no pet.)................................. 24

*In re Greater Houston Orthopaedic Specialists, Inc.*,
295 S.W.3d 323 (Tex. 2009) ........................................................................ 10

*Katz v. Rodriguez*,
563 S.W.2d 627 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.) ........ 23

*Kendrick v. Garcia*,
171 S.W.3d 698 (Tex. App.—Eastland 2005, pet. denied) .........................15, 18

*Key v. Muse*,
352 S.W.3d 857 (Tex. App.—Dallas 2011, no pet.) ....................................... 19

*Kingwood Specialty Hosp., Ltd. v. Barley*,
328 S.W.3d 611 (Tex. App.—Houston [14th Dist.] 2010, no pet.).................... 3

*Lal v. Harris Methodist Fort Worth*,
230 S.W.3d 468 (Tex. App.—Fort Worth 2007, no pet.)................................. 21

*Loaisiga v. Cerda*,
379 S.W.3d 248 (Tex. 2012) .......................................................................... 6

*Marks v. St. Luke's Episcopal Hospital*,
319 S.W.3d 658 (Tex. 2010) .......................................................................... 7

*Marshall v. Housing Auth. of the City of San Antonio*,
198 S.W.3d 782 (Tex. 2006) .......................................................................... 1

*McKenzie v. Carte*,
385 S.W.2d 520 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.) ...16, 17

*Mitchell v. Berry*,
No. 05-06-01328-CV, 2007 WL 4111923
(Tex. App.—Dallas Nov. 20, 2007, pet. struck) .................................................. 1

*Nexion Health at Beechnut, Inc. v. Paul*,
335 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2011, no pet.).. 14, 19, 20, 24

*Nolan v. Hughes*,
349 S.W.3d 209 (Tex. App.—Dallas 2011, no pet.) .....................................5, 6

*Offenbach v. Stockton*,
285 S.W.3d 517 (Tex. App.—Dallas 2009)...................................................... 17

*Ogletree v. Matthews*,
262 S.W.3d 316 (Tex. 2007) ........................................................................ 24

*Osonma v. Smith*,
No. 04-08-00841-CV, 2009 WL 1900404
(Tex. App.—San Antonio 2009, pet. denied) ...................................................... 3

*Otero v. Alonzo*,
No. 13-10-00304-CV, 2011 WL 765673
(Tex. App.—Corpus Christi Mar. 3, 2011, no pet.) ........................................ 14

*Padre Behavioral Health Sys., LLC v. Chaney*,
310 S.W.3d 78 (Tex. App.—Corpus Christi 2010, no pet.) .............................. 3

*Pinnacle Homes Inc. v. R.C.L. Offshore Eng'g Co.*,
 640 S.W.2d 629 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).16, 17

*Quick v. City of Austin*,
 7 S.W.3d 109 (Tex. 1998) ........................................................................ 24

*Ray v. Farmers' State Bank of Hart*,
 576 S.W.2d 607 (Tex. 1979) .................................................................... 22

*Reddy v. Hebner*,
 435 S.W.3d 323 (Tex. App.—Austin 2014, pet. filed) ..................................... 19

*Rio Grande Valley Vein Clinic, P.A. v. Guerrero*,
 431 S.W.3d 64 (Tex. 2014) ........................................................................ 6

*Salinas v. Dimas*,
 310 S.W.3d 106 (Tex. App.—Corpus Christi 2010, pet. denied)...................... 15

*Shah v. Moss*,
 67 S.W.3d 836 (Tex. 2001) ...................................................................... 19

*SSC Robstown Operating Co. LP v. Perez*,
 No. 13-12-00318-CV, 2013 WL 1838597
 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) ............................20, 21

*Stockton v. Offenbach*,
 336 S.W.3d 610 (Tex. 2011) .................................................. 15, 16, 18, 19, 20

*Stroud v. Grubb*,
 328 S.W.3d 561 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)..2, 3, 12, 13

*Tenet Hospital Ltd. v. Rivera*,
 445 S.W.3d 698 (Tex. 2014) .................................................................... 19

*Univ. of Tex. Health Science Ctr. at Houston v. Gutierrez*,
 237 S.W.3d 869 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).............. 15

*Yancy v. United Surgical Partners Int'l, Inc.*,
 236 S.W.3d 778 (Tex. 2007) .................................................................... 19

*Zanchi v. Lane*,
  408 S.W.3d 373 (Tex. 2013) ................................................................8, 9, 11, 19

**Statutes**                                                                **Pages(s)**

TEX. CIV. PRAC. & REM. CODE §§ 74.001-.507 (Vernon 2011) ............................. 1

TEX. CIV. PRAC. & REM. CODE § 74.351(a) (Vernon 2011) .................2, 8, 9, 18, 24

TEX. CIV. PRAC. & REM. CODE § 74.351(b) (Vernon 2011) ........................8, 21, 25

TEX. CIV. PRAC. & REM. CODE § 74.351(c) (Vernon 2011) ................................. 18

**Rules**                                                                    **Page(s)**

TEX. R. APP. P. 38.1(h)..................................................................................... 1

TEX. R. CIV. P. 21a.....................................................................................14, 15

TEX. R. CIV. P. 299.....................................................................................15, 17

TEX. R. EVID. 402 .......................................................................................... 1

TEX. R. EVID. 403 .......................................................................................... 1

TEX. R. EVID. 801 .......................................................................................... 1

TEX. R. EVID. 802 .......................................................................................... 1

NO. 13-15-00059-CV

## IN THE COURT OF APPEALS
## FOR THE THIRTEENTH DISTRICT
## AT CORPUS CHRISTI, TEXAS

**MATHEW ALEXANDER, M.D., INDIVIDUALLY AND AS PRESIDENT OF SOUTH TEXAS BRAIN AND SPINE CENTER,**
Appellant,

**v.**

**DARLENE GARZA,**
Appellee.

On Appeal from County Court at Law No. 1, Nueces County, Texas
Cause No. 2012-CCV-61201-1
(Hon. Robert J. Vargas)

## REPLY BRIEF OF APPELLANT

**TO THE HONORABLE JUSTICES OF THE THIRTEENTH COURT OF APPEALS:**

Appellant Mathew Alexander, M.D., Individually and as President of South

Texas Brain and Spine Center ("Dr. Alexander" or "Appellant") submits this Reply

Brief of Appellant, in accordance with Rules 9.4 and 38 of the Texas Rules of

Appellate Procedure and all local rules of this Court. In Reply to the Brief of

Appellee[1] Darlene Garza ("Appellee"), Appellant respectfully represents as follows:[2]

---

[1] Appellant will cite his opening brief as "Br." and the Brief of Appellee as "Resp."

[2] Appellant stands on the arguments and legal authority presented in his primary brief. Thus, to the extent Appellant may not reply herein to a particular assertion or argument or citation by Appellee, such conduct should not be construed as acquiescence by Appellant in any of Appellee's arguments or waiver by Appellant of any argument made in his Brief of Appellant or in this Reply Brief.

## ARGUMENT AND AUTHORITIES IN REPLY

Appellee missed the deadline for serving Chapter 74[3] expert reports. Therefore, the trial court abused its discretion in denying Appellant's Second Motion to Dismiss. This Court should reverse the trial court's order denying Appellant's Second Motion to Dismiss, dismiss Appellee's claims with prejudice, and remand for a determination of Appellant's reasonable attorney's fees and costs of court.

## I.   Objection to Appellee's Statement of Facts and Motion to Strike

Appellant stands by his statement of facts in his opening brief. Appellant objects to Appellee's reference to an external webpage on page 2 of Appellee's Statement of the Facts. This webpage was not offered or in evidence before the trial court, nor should it have been. It is hearsay, irrelevant to the issues before the trial court and this Court, and highly improper where it obviously was included to prejudice Appellant before this Court. *See* TEX. R. EVID. 402, 403, 801, 802. Appellant moves that the Court strike those portions of Appellee's brief or, at a minimum, refuse to consider those references. *See Mitchell v. Berry*, No. 05-06-01328-CV, 2007 WL 4111923, at \*3 (Tex. App.—Dallas Nov. 20, 2007, pet. struck) (refusing to consider appellant's factual assertions unsupported by the record (citing TEX. R. APP. P. 38.1(h); *Marshall v. Housing Auth. of the City of San*

---

[3]   TEX. CIV. PRAC. & REM. CODE §§ 74.001-.507 (Vernon 2011).

*Antonio*, 198 S.W.3d 782, 789 (Tex. 2006))); *Carlisle v. Philip Morris, Inc.,* 805 S.W.2d 498 (Tex. App.—Austin 1991, writ denied) (portion of appellants' brief (1) citing and quoting from scientific and medical publications which had not been submitted to trial court and included as part of evidence, and (2) including "facts" interspersed with disparaging comments about defendants would be stricken from brief since such materials were outside trial record).

## II.  Appellee's Report Was Untimely

### A.  Appellee First Asserted a Health Care Liability Claim Against Appellant in the Original Petition

Appellee sued Appellant Dr. Mathew Alexander in the Original Petition filed June 19, 2012. (CR 7-24). Thus, Appellee's expert reports and curriculum vitae were due to be served by October 17, 2012, 120 days from the filing of the Original Petition. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a) (Vernon 2011).

Appellee devotes several pages arguing that the 120-day deadline to serve an expert report runs from the date the plaintiff first asserted a health care liability claim against the defendant. (Resp. at 9-11). This argument misses the point. Appellant does not dispute that the deadline begins running only after claims are asserted against a particular defendant. *See Stroud v. Grubb*, 328 S.W.3d 561, 565-66 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

In every case cited by Appellee, there was no question that claims were first asserted against the defendant in an amended petition such that the report deadline

began running with the filing of that petition. (Resp. at 9-11) (citing *Padre Behavioral Health Sys., LLC v. Chaney*, 310 S.W.3d 78 (Tex. App.—Corpus Christi 2010, no pet.) (hospital not joined as party until third amended petition); *Hayes v. Carroll*, 314 S.W.3d 494, 500 (Tex. App.—Austin 2010 no pet.) (original petition sued hospital, whereas physicians added in amended petition); *Daybreak Comm. Servs., Inc. v. Cartrite*, 320 S.W.3d 865, 871 (Tex. App.—Amarillo 2010, no pet.) (original petition asserted claims against Daybreak Group, Ltd. Co, a distinct non-health care provider, whereas amended petition asserted claims against Daybreak Community Services, Inc., a health care provider); *Kingwood Specialty Hosp., Ltd. v. Barley*, 328 S.W.3d 611, 613 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (original petition named physician as sole defendant, and amended petition later named hospital as additional defendant); *Stroud*, 328 S.W.3d at 562 (original petition sued Dr. Avendano, whereas fourth amended petition named Dr. Stroud for the first time); *Osonma v. Smith*, No. 04-08-00841-CV, 2009 WL 1900404, at *1 (Tex. App.—San Antonio 2009, pet. denied) (original petition named Methodist Hospital, The Hand Center, and Dr. Person as defendants, whereas amended petition added Dr. Osonma and his employer)).

But here, Dr. Mathew Alexander was named and sued in the Original Petition. (Br. at 14-22). Again, Appellee identified Dr. Mathew Alexander in the "Parties" to the suit on page two of her Original Petition, stating:

Defendant **Dr. Mathew Alexander** is a resident of the state of Texas. He can be served through his Attorneys, McKibben, Woolsey, and Villareal, LLP at 555 N. Carancahua St. #1100 Corpus Christi, TX 78401.

(CR 8) (emphasis added). Noticeably, Appellee never addresses or attempts to explain away this statement. (*See* entire Resp.). Nor does Appellee address her statement in the Original Petition that South Texas Brain and Spine Center "can be served through its registered agent, **Dr. Mathew Alexander**, at 1227 3rd St., Corpus Christi, Texas 78404-2313." (CR 8) (emphasis added). And these same statements were made in Appellee's First Amended Petition, which Appellee admits named Dr. Mathew Alexander. (CR 60).

Appellee attempts to rely largely on the style of the case in the Original Petition which did not specifically name Dr. Mathew Alexander. (Resp. at 11). But Texas law does not support that the style of case dictates who has been sued. Rather, the legal effect of a pleading is not determined by its style but by its allegations and evident purpose. *Espeche v. Ritzell*, 123 S.W.3d 657, 665 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Although Jonathan was not named in the style of the lawsuit until the first amended petition, his claims as a third-party beneficiary to the contract were included in Espeche's original petition."); *Douglas v. KPH Consolidation, Inc.*, No. 14-12-01016-CV, 2013 WL 5883852, at *3 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, no pet.) (the identity of the parties is determined from the substance of the matter, even though

that identity may not be accurately reflected by the style of the case).  The court must consider the petition as a whole to determine who is being sued.  *Nolan v. Hughes*, 349 S.W.3d 209, 212 (Tex. App.—Dallas 2011, no pet.).

Construing the petition as a whole, it is clear that Appellee intended to sue Dr. Mathew Alexander, the Dr. Alexander that is president of South Texas Brain and Spine Center.  (CR 7-24).  Beyond her description of Dr. Mathew Alexander as a "Defendant" in the "Parties" section of her Original Petition, Appellee stated: "All of the actions of each Defendant violated the approximate standard of care for the relevant healthcare facilities or providers." (CR 8, 11).  And again, there is no evidence that there exists a "Dr. Lamar Alexander."  At the hearing, Appellee did not dispute that there is no Dr. Lamar Alexander in Corpus Christi. (*See* 3 RR 49).  At one point, the trial court acknowledged that "[o]bviously, Mathew Alexander was named a party . . . ."  (3 RR 50).

Appellee takes issue with Appellant's reference to the pre-suit notice letter as evidence of Appellee's intent to sue Dr. Mathew Alexander.  (Resp. at 11 n.2).  Appellee did not object when these letters and the authorizations for release of protected health information were attached to Appellant's supplemental brief in support of the Second Motion to Dismiss.  (*See* CR 395-401; 3 RR 1-58).  Appellee made no argument before the trial court concerning the effect of these documents.  While courts construe the petition to see who has been sued, Appellee

offers no law barring a court from looking at additional evidence to determine such a dispute. In fact, in cases involving misnomer or misidentification, courts have looked at evidence beyond the pleadings to determine what person or entity has been sued. *See, e.g.*, *Nolan v. Hughes*, 349 S.W.3d 209, 212 (Tex. App.—Dallas 2011, no pet.) (looking at pleadings and summary judgment evidence offered by defendant, including an assumed name certificate and defendant's affidavit, to conclude that defendant owned a particular restaurant, and that plaintiff did not file her first amended petition naming defendant as the owner of the restaurant where she was injured and defendant was not served and had no knowledge of claims within the two-year limitations period); *Dezso v. Harwood*, 926 S.W.2d 371, 374 (Tex. App.—Austin 1996, writ denied) (looking a pleadings, citation, and testimony to determine that plaintiff intended to sue Elsie Dezso and had simply misnamed her in the portions of the pleadings and in the citation).

And, in Chapter 74 cases, Texas courts regularly examine the entire record and will look to extrinsic evidence to determine whether a claim presents a "health care liability claim" and whether a party is a "health care provider" as those terms are defined by the statute. *See, e.g.*, *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012) (when making determination of whether claim is for health care liability, "courts should consider the entire court record, including the pleadings, motions and responses, and relevant evidence properly admitted."); *Rio Grande Valley Vein*

*Clinic, P.A. v. Guerrero*, 431 S.W.3d 64, 65 (Tex. 2014) (looking not only at allegations in petition but documentation in evidence showing that plaintiff completed forms for medical history, informed consent, and medical information disclosure, indicating she was a patient, and concluding that plaintiff's claims were health care liability claims); *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 759 (Tex. 2014) (record established that defendant company was an affiliate of a physician and thus a "health care provider" under Chapter 74).[4]

Otherwise, Appellee makes no attempt to address or explain why the pre-suit notice letter and authorization for release of protected health information do not show Appellee's intent to sue Dr. Mathew Alexander, president of South Texas Brain and Spine Center. As explained, the pre-suit letter contends that Appellee's injuries are a result of the negligence of "Dr. Mathew Alexander, individually and as president of South Texas [B]rain and [S]pine [C]enter" (CR 343), and the authorization form for release of protected health information repeatedly refers to "Dr. Mathew Alexander." (CR 344-45; *see also* Br. at 19-20). And, the letter was dated June 18, 2012, one day before Appellee filed her Original Petition. (CR 342-

---

[4]    Thus, Appellee's reliance on *Marks v. St. Luke's Episcopal Hospital*, 319 S.W.3d 658 (Tex. 2010) is misplaced. (Resp. at 11 n.2).

43). It is simply disingenuous for Appellee to claim or suggest that she did not intend to sue Dr. Mathew Alexander all along.[5]

Because Appellee sued Dr. Mathew Alexander in the Original Petition on June 19, 2012, Appellee's deadline for service of the expert report and curriculum vitae was October 17, 2012. TEX. CIV. PRAC. & REM. CODE § 74.351(a) (Vernon 2011). Appellee failed to serve a report and curriculum vitae by that date, requiring dismissal under the statute. *Id.* § 74.351(b).

**B.** ***Zanchi v. Lane* Supports That 120-day Period for Service of Expert Report Began Running when Appellant Was Named and Sued in the Original Petition**

Contrary to Appellee's suggestion, Appellant did not cite and discuss *Zanchi v. Lane* to support that the 120-day period for serving expert reports is triggered even though a defendant is not named as a party in the original petition. (Resp. at 12-13) (citing *Zanchi v. Lane*, 408 S.W.3d 373 (Tex. 2013)). Rather, Appellant discussed *Zanchi* in response to Appellee's argument to the trial court that in determining who was sued, one should only look to the petition that was served on the defendant. (Br. at 18-19; 3 RR 49-55). According to Appellee, because the

---

[5] If, as Appellee contends, she did not intend to sue Dr. Mathew Alexander in the Original Petition, then it is curious that Appellee faxed the report the same day and approximate time (October 17, 2012, 6:30 p.m.) she claims she was serving reports on other defendants, including Dr. Konasiewicz, who were undoubtedly named in the Original Petition and for whom October 17, 2012 was the deadline for service of reports. (*See* CR 170-98, 396; 2 RR 48).

Original Petition was not served on Appellant, the First Amended Petition should control the running of the 120-period. (3 RR 49-55).

But again, whether the Original Petition was served on Dr. Mathew Alexander does not control when the 120-day period began running. What matters is whether Dr. Mathew Alexander was named as a party in the Original Petition. *See Zanchi*, 408 S.W.3d at 377. Because Appellee named Dr. Mathew Alexander in the Original Petition and expressly described him as a party in Paragraph 2.4 (CR 8), Dr. Mathew Alexander was "named in a lawsuit" for purposes of the Chapter 74 expert report requirement. *Zanchi*, 408 S.W.3d at 377. The Original Petition was filed June 19, 2012, making the 120-day deadline October 17, 2012. (CR 7); TEX. CIV. PRAC. & REM. CODE § 74.351(a) (Vernon 2011). There is no dispute that Appellee served her report on October 18, 2012, one day late. (Br. at 23-26).

### C. Dr. Mathew Alexander Was Named in the Original Petition; Alternatively, Appellee Simply Misnamed Him

Appellant has argued that Appellee named and sued Dr. Mathew Alexander in the Original Petition, and that, alternatively, the suit relates back to the Original Petition due to a misnomer which was obviously intended to refer to Dr. Mathew Alexander. (Br. at 14-22).

Appellee now asserts that Appellant cannot use the misnomer doctrine as a "sword" to compel dismissal of a health care liability claim. (Resp. at 13-14). But

Appellee was the first to raise the misidentification doctrine (and necessarily the misnomer doctrine) in response to Appellant's Second Motion to Dismiss. (CR 211-12 n.1) (asserting that the Original Petition involved a misidentification and that the First Amended Petition cannot relate back to the date of the Original Petition). Ironically, Appellee wishes to use misidentification—a doctrine which normally favors and shields defendants—as a "sword" to claim that she did not sue Dr. Mathew Alexander in the Original Petition such that the expert report period did not begin running with that petition.

Appellee has provided no case law to support that the misnomer or misidentification doctrines are applicable only in the context of statutes of limitations, or to protect plaintiffs. (*See* Resp. at 13-15). Instead, Texas courts have examined and applied (or refused to apply) the doctrines in multiple contexts. *See, e.g.*, *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 326 (Tex. 2009) (plaintiff's misnomer of itself did not negate non-suit and later motion for non-suit with correct name related back to the original notice of non-suit containing the misnomer); *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 334 (Tex. App.—Dallas 2014, pet. denied) (examining and applying misnomer doctrine in contract interpretation and holding that plaintiff could not escape non-compete agreement based on mere misnomer of defendant employer in the contract); *Dezso v. Harwood*, 926 S.W.2d 371, 374 (Tex. App.—Austin 1996, writ denied)

(refusing to apply misidentification doctrine to save defendant from a default judgment, though defendant was misnamed in citation and portions of the petition).

Appellee also contends that misnomer is not applicable because Appellant was not served with the Original Petition. (Resp. at 14-15). But again, this Court must look at the petitions—regardless of whether they were served—to determine when the 120-day period for service of expert reports commenced. *See Zanchi*, 408 S.W.3d at 377. Because of this rule, it is appropriate to examine whether, if Dr. Mathew Alexander had been served with the Original Petition, he would have been on notice of a claim against him. If Dr. Mathew Alexander had been served with the Original Petition, the same misnomer issue would arise. *See Dezso v. Harwood*, 926 S.W.2d 371, 373 (Tex. App.—Austin 1996, writ denied) ("When the correct defendant is served under the wrong name the case is not one of misidentification but rather misnomer.") (citing *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4–5 (Tex. 1990)); *Burchinal v. PJ Trailers-Seminole Mgmt. Co., LLC*, 372 S.W.3d 200, 214 (Tex. App.—Texarkana 2012, no pet.) (part of the reason misnomer may apply is because the party intended to be sued has been served *and put on notice* that he is the intended defendant) (emphasis added).

A person receiving the Original Petition would have been on notice that Appellee's claims were based on treatment through South Texas Brain and Spine Center. (CR 9-16). Only Dr. Mathew Alexander is the president of South Texas

Brain and Spine Center; there is no evidence of a "Dr. Lamar Alexander" that is president of South Texas Brain and Spine Center. (*See* CR 256; 3 RR 49). Appellee knew and indicated that Dr. Mathew Alexander was the registered agent for the Center. (CR 8). Appellee described "Defendant Dr. Mathew Alexander" as one of the "Parties" and stated that "All of the actions of each Defendant violated the approximate standard of care for the relevant healthcare facilities or providers." (CR 8, 11). No rational defendant named Dr. Mathew Alexander and associated with South Texas Brain and Spine Center would have ignored this petition had it been served, because it could have resulted in a default judgment. *See Dezso*, 926 S.W.2d at 374 (upholding default judgment against Elsie Dezso and rejecting her claims of misidentification, where although citation and portions of petition misnamed Elsie Dezso as "Judi Dezso," allegations in petition made clear that Elsie Dezso's business formed the basis of the plaintiff's lawsuit, and "Elsie Dezso should have logically concluded that Harwood intended to sue her and that he had simply misnamed her.").

And Appellee's reliance on *Daybreak Community Services, Inc. v. Cartrite*, 320 S.W.3d 865 (Tex. App.—Amarillo 2010, no pet.) and *Stroud v. Grubb*, 328 S.W.3d 561 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) is misplaced. (Resp. at 15-16). In *Cartrite*, the plaintiff originally sued "Daybreak Group, Ltd. Co." *Cartrite*, 320 S.W.3d at 866-67. But the parties later entered a Rule 11

agreement allowing the plaintiff to amend her petition to substitute the correct defendant, "Daybreak Community Services, Inc." *Id.* at 867. The parties recognized that the two companies were separate and distinguishable entities, with Daybreak Group merely providing "financial, accounting, payroll and administrative support services," whereas Daybreak Community Services was a health care provider. *Id.* at 873. The court did not find—as Appellee states—that the "plaintiff's misidentification of the defendant entitled her to a new 120-day deadline." (Resp. at 16). It was the defendant, not the plaintiff, who pushed the misidentification doctrine, which the court did not adopt. Rather, the court held that "[w]hen Cartrite filed her first amended petition on July 6, 2009, alleging health care liability claims for the first time against Daybreak Community Services, Inc., a health care provider, she was entitled to have 120 days from the filing of that petition in which to serve Nurse Foster's expert report and curriculum vitae." *Id.* And *Stroud* simply involved a case where the plaintiff originally sued an existing physician that had performed a cardiac catheterization (Dr. Avendano), and later amended his petition to add Dr. Stroud, who had performed a triple coronary artery bypass grafting. *Stroud*, 328 S.W.3d at 562.

Neither *Cartrite* nor *Stroud* is analogous to the situation here. Again, there is no evidence that there exists a separate and distinguishable person named "Dr. Lamar Alexander" that is associated with South Texas Brain and Spine Center and

that Appellee intended to sue. Appellee did not add a new person or entity when she "saw [her] mistake and corrected it through an amended petition." (3 RR 49). She simply corrected the typographical errors in the Original Petition that misnamed Dr. Mathew Alexander. Because Appellee named and sued Appellant in the Original Petition, or alternatively, misnamed him such that the amended petition relates back, the expert reports were due to be served no later than October 17, 2012. Appellee missed that deadline.

### D. Appellee's Expert Report Faxed After 5:00 p.m. Was Late; There Is No Due Diligence Exception for Service of Expert Reports

There is no dispute that Appellee faxed Dr. Barrash's report after 5:00 p.m. on October 17, 2012. (CR 396; Resp. at 3) (admitting that report was faxed at approximately 6:28 p.m. on October 17th). Under Rule 21a and Texas case law, the report is deemed to have been served the next day, October 18th, rendering it one day late. TEX. R. CIV. P. 21a; *Nexion Health at Beechnut, Inc. v. Paul*, 335 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2011, no pet.)).

Appellee contends that service of the report—even after 5:00 p.m. on the last day of the deadline—was timely because a due diligence exception applies. (Resp. at 16-19). Appellee first asserts that Chapter 74 "does not define *how* a plaintiff must serve an expert report on a defendant." (Resp. at 16-17). But this Court and others have established that service of expert reports under section 74.351(a) must comply with Rule 21a. *Otero v. Alonzo*, No. 13-10-00304-CV, 2011 WL 765673,

at *3 (Tex. App.—Corpus Christi Mar. 3, 2011, no pet.) (citing *Salinas v. Dimas*, 310 S.W.3d 106, 108 (Tex. App.—Corpus Christi 2010, pet. denied)); *Univ. of Tex. Health Science Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 872 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 459 (Tex. App.—Austin 2006, no pet.); *Kendrick v. Garcia*, 171 S.W.3d 698, 703-04 (Tex. App.—Eastland 2005, pet. denied). Rule 21a expressly provides that documents served by facsimile after 5:00 p.m. are deemed served the following day. TEX. R. CIV. P. 21a.

Appellee then urges that a due diligence exception to the 120-day deadline should apply, based on *Stockton v. Offenbach*, 336 S.W.3d 610 (Tex. 2011). (Resp. at 17-19). Here, in its findings of fact and conclusions of law, the trial court did not find, conclude, or imply that there is a due diligence exception to the deadline for service of Chapter 74 expert reports, or that any alleged exception applies in this case. (*See* SCR 16-20). The findings of fact and conclusions of law are wholly silent on this matter, and Appellant asserts that a due diligence exception cannot be inferred from or deemed part of the trial court's findings of fact, conclusions of law, or judgment.

When a party does not request—and the trial court does not make—findings on an entire ground of recovery or defense, the appellate court cannot presume that specific ground of recovery or defense supports the judgment. TEX. R. CIV. P. 299;

*see F.R. Hernandez Constr. & Supply Co., Inc. v. Nat'l Bank of Commerce of Brownsville*, 578 S.W.2d 675 (Tex. 1979)). Where the trial court files findings which do not establish any element of the grounds of defense, the party relying upon that defense must file a request for additional findings such as to avoid waiver of that defense on appeal. *McKenzie v. Carte*, 385 S.W.2d 520, 529 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.). An express finding of fact cannot extend by implication to cover independent grounds of defense. *Pinnacle Homes Inc. v. R.C.L. Offshore Eng'g Co.*, 640 S.W.2d 629, 630 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (citing *F.R. Hernandez Constr.*, 578 S.W.2d at 679).

Here, it was Appellee's burden to request any findings of fact and conclusions of law addressing the purported due diligence exception to the statutory deadline found in section 74.351. *See Harrell v. Alvarez*, 46 S.W.3d 483, 485 (Tex. App.—El Paso 2001, no pet.) (in face of statute of limitations defense, if there is a fact issue on the question of due diligence of service, plaintiff had burden to obtain favorable findings); *Stockton*, 336 S.W.3d at 616-17 (plaintiff failed to raise fact issue, even if due diligence exception existed). Appellee prepared the proposed findings of fact and conclusions of law that did not address the due diligence arguments or application to Chapter 74, and the trial court never added anything to those prepared findings and conclusions. *Compare* (CR 444-48) *with*

(SCR 16-20). Nor did Appellee make any requests for additional findings of fact and conclusions of law. And nothing in the reporter's record shows the trial court's intent to apply any due diligence exception to the section 74.351 deadline, or any intent to rely on a due diligence exception to extend the deadline for service of the report by fax. (*See* 2 RR 5-56; 3 RR 5-57). No element of any supposed due diligence exception was included in the findings of fact, was conclusively established, judicially admitted, or stipulated to such that in the absence of a missing element, such element could be deemed. (*Id.*).

Thus, Appellee has waived any due diligence argument, and a due diligence exception cannot be deemed in support of the trial court's judgment. TEX. R. CIV. P. 299; *F.R. Hernandez Constr.*, 578 S.W.2d at 679; *McKenzie*, 385 S.W.2d at 529; *Pinnacle Homes*, 640 S.W.2d at 630. But, without waiving his argument that the court's findings and conclusions do not support any such exception, Appellant will address the issue.

The Texas Supreme Court has not adopted any due diligence exception to the deadline for serving Chapter 74 expert reports. And Texas courts of appeals have uniformly held that no exceptions exist for due diligence, accident, or mistake, especially because the Legislature expressly removed the provision allowing for extensions of time if the claimant could show an "accident or mistake" in failing to timely serve a report. *See Offenbach v. Stockton*, 285

S.W.3d 517, 521 (Tex. App.—Dallas 2009) ("Unlike former article 4590i, which gave a claimant two opportunities to seek an extension of time in which to furnish an expert report, [section] 74.351(a) **does not contain a 'due diligence' or 'good cause' exception**." (emphasis added) (citations omitted)), *aff'd*, 336 S.W.3d 610 (Tex. 2011); *Estate of Regis v. Harris Cnty. Hosp. Dist.*, 208 S.W.3d 64, 68 (Tex. App.-Houston [14th Dist.] 2006, no pet.) ("In repealing article 4590i and enacting Civil Practice and Remedies Code chapter 74, the legislature specifically removed the trial court's ability to grant an extension based on a plaintiff's diligence."); *Kendrick v. Garcia*, 171 S.W.3d 698, 705 (Tex. App.—Eastland 2005, pet. denied) ("As a result of the omission of the 'accident or mistake' exception in Section 74.351, we conclude that the new statute precludes the existence of a good faith exception to the requirement of timely serving expert reports."). Rather, section 74.351 creates only two exceptions to the 120–day deadline: (1) the parties agree to an extension; or (2) the trial court is permitted to grant one thirty-day extension to the plaintiff to cure a deficient but otherwise timely report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (c); *Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009). Neither exception applies in this case. Contrary to Appellee's assertion, engrafting a due diligence exception would indeed frustrate legislative intent and the purpose of the Legislature's amendments to Chapter 74.

In *Stockton v. Offenbach*, 336 S.W.3d 610, 615-16 (Tex. 2011)—relied on by Appellee—the supreme court declined to adopt any due diligence exception. *See Reddy v. Hebner*, 435 S.W.3d 323, 330 (Tex. App.—Austin 2014, pet. filed) (rejecting argument that *Stockton* court applied concepts of due diligence or relation-back to service of Chapter 74 reports); *Key v. Muse*, 352 S.W.3d 857, 862-63 (Tex. App.—Dallas 2011, no pet.) (declining to apply due diligence doctrine and recognizing that the *Stockton* court stopped short of deciding whether a due diligence exception applies to the expert report deadline), *abrogated on other grounds by Zanchi v. Lane*, 408 S.W.3d 373 (Tex. 2013). Rather, the *Stockton* court noted that, even assuming a due diligence exception existed, the plaintiff could not show such diligence. *Stockton*, 336 S.W.3d at 616-17. The plaintiff knew of the difficulty in serving the defendant and moved for substituted service, but did not apprise the court of the 120-day deadline or its significance to the pending motion, and allowed the report deadline to lapse before re-urging the motion. *Id.*[6]

While Appellee wishes to ignore *Nexion Health at Beechnut, Inc. v. Paul*, 335 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2011, no pet.), the decision is

[6] None of the other cases cited by Appellee established a due diligence exception for service of Chapter 74 expert reports. (Resp. at 17-18) (citing *Tenet Hospital Ltd. v. Rivera*, 445 S.W.3d 698, 704-05 (Tex. 2014); *Shah v. Moss*, 67 S.W.3d 836 (Tex. 2001); *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778 (Tex. 2007)).

on point. And, the court would have likely rejected any due diligence argument because it did reject Paul's argument that her failure to timely serve the report was not due to any conscious indifference on her part. *Id.* at 719 ("[S]uch circumstances are no longer a defense to untimely service under section 74.351.") (citing *Badiga v. Lopez*, 274 S.W.3d 681, 684 (Tex. 2009)). And that *Nexion Health* was issued before *Stockton* is of no moment. The *Stockton* court did not hold that a due diligence exception exists and did not overrule or even address *Nexion Health*. *See generally*, *Stockton*, 336 S.W.3d 610. And after *Stockton*, this Court cited *Nexion Health* with approval to hold that service of an expert report one day later requires dismissal under the statute. *SSC Robstown Operating Co. LP v. Perez,* No. 13-12-00318-CV, 2013 WL 1838597 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) ("The Texas Legislature created clear deadlines under section 74.351. While we recognize this may sometimes result in seemingly harsh consequences, this Court lacks the authority to extend the statutory deadlines.") (citing *Nexion Health*, 335 S.W.3d at 719).

Even if a due diligence exception exists—and it does not—no such exception would apply here. Unlike the allegedly evasive defendant in *Stockton*, Appellant had already been served with process, appeared, and answered the suit almost a month before the 120-day deadline. (CR 78-80). Appellee did not have to exercise due diligence to find Appellant's attorney of record to timely serve him

with an expert report. Thus, Appellee cannot urge that service of the report one or two days late satisfies non-existent exceptions for due diligence, accident, or mistake. *See Perez,* 2013 WL 1838597, at \*4; *Lal v. Harris Methodist Fort Worth*, 230 S.W.3d 468, 472 (Tex. App.—Fort Worth 2007, no pet.) (affirming trial court's dismissal where plaintiff faxed expert reports two days after deadline, and rejecting plaintiff's argument that she "worked diligently" to provide the report and that defendants were not prejudiced by the delay).

Appellee did not serve an expert report by the statutory deadline, requiring dismissal under the statute. TEX. CIV. PRAC. & REM. CODE § 74.351(b) (Vernon 2011). The trial court abused its discretion in denying Appellant's Second Motion to Dismiss. This Court should reverse the trial court's order, dismiss Appellee's claims with prejudice, and remand to the trial court for a determination of Appellant's reasonable attorney's fees and costs of court.

## III. There Is Legally and Factually Insufficient Evidence to Support the Trial Court's Findings of Fact and Conclusions of Law

Contrary to Appellee's assertions, the trial court's Findings of Fact Numbers 3, 4, 5, and 8 and Conclusion of Law Number 18 are supported by legally and factually insufficient evidence and Conclusion of Law Number 18 is legally erroneous. (Br. at 14-25).

The evidence to support Findings of Fact Numbers 3, 4, 5, and 8 and Conclusion of Law Number 18 is no more than a mere scintilla. *See City of Keller*

*v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Appellee offered no evidence to support that there exists a "Dr. Lamar Alexander" that is president of South Texas Brain and Spine Center that she intended to sue. More importantly, the evidence offered by Appellant conclusively established the opposite of the vital fact of the intended defendant. *See City of Keller*, 168 S.W.3d at 810. The pleadings, pre-suit notice letters, and authorizations for release of protected health information conclusively established that Appellee's suit was directed at Dr. Mathew Alexander, the president of South Texas Brain and Spine Center. (CR 342-45). There is no evidence to support that Appellee did not sue Appellant in the Original Petition.

And although deference must be given to the trial court's findings of fact, that deference will be given only in those instances in which findings of fact are supported by evidence found in the record. *Brown v. The State Bar of Texas*, 960 S.W.2d 671, 675 (Tex. App.—El Paso 1997, no writ) (citing *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607 (Tex. 1979)). Findings of fact are not conclusive when a complete reporter's record appears in the appellate record, as in this case. *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 717 (Tex. App.—Corpus Christi 2004, pet. withdrawn). Only when there is *sufficient competent evidence of probative force* to support the finding must it be sustained. *Brown*, 960 S.W.2d at 675 (emphasis added). When the evidence is so weak or the finding so against the

great weight and preponderance of the evidence as to be manifestly unjust, a reviewing court must set aside that finding. *See Cameron County Drainage Dist. No. 5 v. Gonzales*, 69 S.W.3d 820, 825 (Tex. App.—Corpus Christi 2002, no pet.).

Appellee's statement that "a finding of fact by the trial court, not assailed on appeal, is entitled to the same deference as a jury's finding and is binding on the reviewing court" is misplaced; Appellant is obviously attacking the factual findings (Br. at xiii, 13-26), and therefore they are not entitled to such deference. *See Katz v. Rodriguez*, 563 S.W.2d 627, 631 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.) (unless the trial court's findings of fact are challenged by point of error on appeal, however, they are binding on the appellate court).

Here, the evidence showed that Appellee intended to and did sue Appellant in the Original Petition on June 19, 2012, such that expert reports were due to be served no later than October 17, 2012. (CR 7-24; CR 342-45). The evidence showed that Appellee did not serve reports until October 18, 2012. (CR 175-98, 396). There is legally insufficient competent evidence of probative force to support the trial court's Findings of Fact Numbers 3, 4, 5, and 8, or, alternatively, the trial court's findings are so against the great weight and preponderance of the evidence as to be manifestly unjust such that they must be set aside. *See Gonzales*, 69 S.W.3d at 825.

The trial court's conclusions of law are reviewed de novo as legal questions, and thus accorded no deference by a reviewing court. *Huntley v. Enon Ltd. P'ship*, 197 S.W.3d 844 (Tex. App.—Fort Worth 2006, no pet.) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). Based on the evidence before it, the trial court could come to only one conclusion: that Appellee sued Appellant in the Original Petition and did not timely serve Dr. Barrash's report on October 17, 2012. Thus, the trial court erroneously concluded that the operative pleading asserting a cause of action against Dr. Mathew Alexander was the First Amended Petition and that service of the report was timely. *See Nexion Health at Beechnut, Inc. v. Paul*, 335 S.W.3d 716, 718 (Tex. App.—Houston [14th Dist.] 2011, no pet.); (*See* Conclusion of Law No. 18 (SCR 20)). Because Appellee did not timely serve an expert report, the trial court had no discretion but to dismiss Appellee's suit with prejudice. TEX. CIV. PRAC. & REM. CODE §§ 74.351(a), (b); *Ogletree v. Matthews*, 262 S.W.3d 316, 319-20 (Tex. 2007); *Badiga v. Lopez*, 274 S.W.3d 681, 683 (Tex. 2009).

## CONCLUSION & PRAYER

The trial court abused its discretion in denying Appellant's Second Motion to Dismiss. The pleadings and evidence conclusively established that Appellee sued Dr. Mathew Alexander in the Original Petition filed on June 19, 2012. Appellee's deadline for service of expert reports was October 17, 2012. There is

no dispute that she served Dr. Barrash's report on October 18, 2012, one day late, requiring dismissal of Appellee's suit under section 74.351(b). This Court should reverse the trial court's order denying Appellant's Second Motion to Dismiss, dismiss Appellee's suit with prejudice, and remand to the trial court for a determination of Appellant's reasonable attorney's fees and costs of court. TEX. CIV. PRAC. & REM. CODE § 74.351(b).

**THEREFORE**, Appellant Mathew Alexander, M.D., Individually and as President of South Texas Brain and Spine Center respectfully prays this Court reverse the trial court's order denying Appellant's Second Motion to Dismiss, dismiss Appellee's claims with prejudice, and remand to the trial court with an order to determine and award Appellant's reasonable attorney's fees and costs of court. Appellant prays for all such other and further relief, whether general or special, at law and in equity, as this Court deems just.

Respectfully submitted,

**COOPER & SCULLY, P.C.**


By: /s/Diana L. Faust
      **DIANA L. FAUST**
      diana.faust@cooperscully.com
      State Bar No. 00793717
      **R. BRENT COOPER**
      brent.cooper@cooperscully.com
      State Bar No. 04783250
      **KYLE M. BURKE**
      kyle.burke@cooperscully.com
      State Bar No. 24073089

900 Jackson, Suite 100
Dallas, Texas 75202
(214) 712-9500
(214) 712-9540 (fax)

**ATTORNEYS FOR APPELLANT MATHEW ALEXANDER, M.D., INDIVIDUALLY, AND AS PRESIDENT OF SOUTH TEXAS BRAIN AND SPINE CENTER**


## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief of Appellant was prepared using Microsoft Word 2003, which indicated that the total word count (exclusive of those items listed in rule 9.4(i)(1) of the Texas Rules of Appellate Procedure, as amended) is 6,090 words.

      /s/Diana L. Faust
      **DIANA L. FAUST**

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of this Reply Brief of Appellant on the following counsel of record, on the 12th day of May 2015, by the method indicated:

Mr. Robert C. Hilliard                                           **VIA EFILE**
bobh@hmglawfirm.com
Mr. Rudy Gonzales, Jr.
rgonzales@hmglawfirm.com
Ms. Marion M. Reilly
marion@hmglawfirm.com
Ms. Catherine D. Tobin
catherine@hmglawfirm.com
Mr. John B. Martinez
john@hmglawfirm.com
Mr. T. Christopher Pinedo
cpinedo@hmglawfirm.com
Mr. Todd A. Hunter
todd@hmglawfirm.com
HILLIARD MUNOZ GONZALES, L.L.P.
719 S. Shoreline Blvd., Suite 500
Corpus Christi, TX 78401
**Counsel for Appellee**

Mr. Richard C. Woolsey                                          **VIA EFILE**
RWoolsey@rcwoolseylaw.com
WOOLSEY & ASSOCIATES, P.L.L.C.
555 North Carancahua, Suite 1160
Corpus Christi, TX 78401-0841
**Trial Counsel for Appellant**


 /s/Diana L. Faust
**DIANA L. FAUST**

D/926301v8